The State, ex rel. Ames v. Garber.

LAKE, J.

---

THE STATE OF NEBRASKA, EX REL. JOHN H. AMES v. SILAS GARBER, GOVERNOR.

1. **Statutory Construction**: COMMISSION TO REVISE THE GENERAL LAW: LIMITATION OF ITS POWERS. The commissioners appointed to revise the general laws of the state, under the act of February 16th, 1877, are limited in the performance of their duties to the first day of January, 1878.

The State, ex rel. Ames v. Garber.

2. ———: ———: ———. After the time limited the members of the commission could perform no acts under the law, nor are they entitled to receive from the state any compensation for any services performed ostensibly under its provisions.

APPLICATION for mandamus.

*S. B. Galey* and *M. H. Sessions*, for the relator.

The act in question is clearly directory. *Hurford v. City of Omaha*, 4 Neb., 350. It clearly comes within the rule laid down in *People v. Allen*, 6 Wend., 486. Where the statute specifies a time within which a public officer is to perform an official act regarding the rights and duties of others, it will be considered as directory merely, unless the nature of the act required to be performed, or the language used by the legislature show that the designation of time was intended as a limitation of power. *Id., Gale v. Mead*, 2 Denio, 160. *Hart v. Plum*, 14 Cal., 149. *Pond v. Negus*, 3 Mass., 230. *Smith v. Crittenden*, 16 Mich., 156. 2 Am. Law Reg., 409. *Clark v. Hoskins*, 6 Conn., 108. *Smith v. People*, 47 N. Y., 330.

*T. M. Marquett*, for the respondent.

LAKE, J.

This is an application for a peremptory writ of mandamus to compel the governor to approve and sign a voucher presented to him for that purpose for services alleged to have been performed by the relator, as a member of the commission appointed under the act of the legislature, approved February 16th, 1877, to revise the general laws of the state. This act provides in its fifth section that all vouchers for the payment of such compensation must " be approved by the governor and secretary of state."

It stands admitted that the service for which the ac-

count was rendered was performed, but since the first day of the present month. And the governor places his refusal to approve the account solely on the ground that under the act creating the commission its members " are not entitled to receive pay for services rendered, nor to in any manner disburse moneys appropriated by said act * * * * after the first day of January, 1878."

In other words the refusal to perform the act required of him is based upon the supposition that the existence of this commission is limited by the act in question to the first day of January, 1878, and that consequently after that time its members could perform no act under the law, nor be entitled to receive from the state any compensation for any service performed ostensibly under its provisions.

In view of the unfinished condition of the work that it was designed they should perform and the consequences of our sustaining the governor in his construction of this statute, we had hoped to reach a conclusion different from that to which he seems to have arrived, but we have been unable to do so.

By section 3 it is provided that " they (the commissioners) shall, by the first day of January, 1878, complete the duties assigned them, make a report to the governor of what they have done, what changes have been made, and what amendments and further legislation they deem necessary." This is very plain language, and it is pretty evident that the legislature considered the time given amply sufficient for the purpose, and that they designed the work to be fully completed by the first day of January, 1878. But in addition to this section, and obviously in order that it might be fully understood that they were limited expressly to this time, it is further provided in section 5, that " the sum of one thousand dollars, or as much thereof as may be necessary, is hereby appropriated for the use of said commission, for stationery

The State, ex rel. Ames v. Garber.

and such clerical force as they may find necessary, *in order to complete their labors by the time provided in section three of this act.*"

We are very well aware of the rule frequently applied by courts, by which words in a statute, apparently of limitation, are held to be merely directory. This subject was pretty fully discussed, and the rule applied, in the case of *Hurford v. The City of Omaha*, 4 Neb., 336. And when it can be gathered from a consideration of the entire act, that such was the legislative intent, there is no doubt that the court should give to the language that construction.

But looking to the act before us, we see nothing that would justify us in giving to the words employed to express the legislative will any other than their plain and ordinary meaning. By assuming the language to be merely directory, it seems very clear to us that we would be doing violence to the clearly expressed will of the legislature, that this commission should cease their labors, and make a final report of their work done, by the first day of January, 1878. If they can proceed with their work, at the expense of the state, for any time after the period fixed by the legislature, it must follow that practically there is no limit whatever to the time that may be occupied, or the expense incurred, but the will of the commission itself. We are very certain that the possibility of such a result could not have been contemplated by the legislature, or very different language would have been employed. " In the case of all written laws, it is the intent of the lawgiver that is to be enforced. But this intent is to be found in the instrument itself. It is to be presumed that language has been employed with sufficient precision to convey it, and unless examination demonstrates that the presumption does not hold good in the particular case, nothing will remain except to enforce it." *Cooley Con. Lim.*, 54.

We think the governor has given to the act in question its proper meaning, and therefore the prayer of the relator must be denied.

WRIT DENIED.